So, Mr. Moran, you've reserved two minutes for rebuttal, you have eight minutes to start. You may proceed. Thank you, Your Honor. May it please the court, my client Giovanni Nunez suffers from a combination of mental impairments. Could you move over just so you're kind of in the middle of the work so the mics will pick you up? Thank you. And he's been treated by a long time doctor, Dr. Schulte, a certified psychiatrist. The ALJ determined that the ALJ's mental residual functional capacity is not supported by substantial evidence and is based on an error of the law. As a result, the court should reverse the decision of the commissioner and award benefits or at least remand for a proper application of the law. The ALJ found Dr. Schulte's opinion not persuasive and concluded that the opinions were not supported or consistent with Dr. Schulte's own mental status exams documenting normal speech, memory, and calculation skills. However, Dr. Schulte repeatedly records difficulty with thinking, attention, concentration. In addition, he found multiple other abnormal findings in the record that relate to supportability and consistency. He did not cite to the fact that the claimant had abnormal speech in determining his residual functional capacity assessment. He cited to the fact that the claimant had persistent, irrational anxiety, the fact that the claimant was anxious and constricted at almost every visit to his office, and being the person that was most familiar with the claimant based on that treating relationship that spanned, he was at the facility for several years. And in this case, he had to stop working because of these particular symptoms. And every person that actually came into contact with the claimant examined him as a mental health specialist came to similar conclusions. So, for example... Well, the administrative law judge agreed that he couldn't go back to work as a security guard, but just concluded that he was capable of doing other things, right? The administrative law judge determined that he could do other things. However, the administrative law judge is not a mental health expert. And the administrative law judge based his determination that he could do other things based on the administrative law judge's lay analysis of mental status examinations. But the administrative law judge no longer has to defer to the treating physician, right? We've had a change in the rules and regulations. And the ALJ here wrote at great length and paid a lot of attention to Dr. Schulte's assessment, but said that she didn't have to defer to his conclusion. And she pointed out ways in which she found that Mr. Nunez's condition had improved on Lexapro and Ativan, that he was still able to take the subway, and various aspects of his functioning. And noted that there was a moderate impairment, but not marked and identified in her RFC findings. As well as the vocational expert jobs that he would still be able to do. So she didn't overlook his actual description of Mr. Nunez's condition, but didn't have to accept his conclusion. And she's called on to do that, even though she's a lay professional. So I'm not persuaded by your notion that she needed, which you seem to be implying, that she needed to defer to him because he was a mental health professional. So all we have to do, all we can do, is look to see if her analysis was supported by substantial evidence. And I'm having difficulty finding that it wasn't. So what would you point to in particular, not just Dr. Schulte's opinion, but in his factual description that was wrong, and that undercuts the notion that she had substantial evidence supporting her decision? Yes, Your Honor. I would note that Dr. Schulte, on every visit, indicated that he was anxious, and that he had constricted affect, at least on almost every visit. Dr. Schulte, as the treating doctor, made medical determinations in formulating his psychiatric opinion based on his observations of the claimant. Moreover, Dr. Schulte noted persistent anxiety in the record. And even as later, you can see in the record that there were periods where the claimant did a little better. Going up through February, he decompensated. He started experiencing more anxiety. He was having more difficulty. His medications were raised. He did a little better. And then in May and June, the record shows that he had to miss an appointment because of his anxiety. At his group sessions, he was noted to be tearful. He was still continuing to have sleep issues. He described to Dr. Schulte how he woke up every morning, some days tremulous. The AMJ didn't overlook any of that though, right? What's that? She didn't overlook the, she gave a very comprehensive account of the record and of these particular findings. I think there's a difference between making a mention of something and doing an analysis of it, especially in the context of this particular case. In this particular case, when the claimant saw experts, the experts with the claimant in front of them, they're making assessments based on mood mannerisms. They're making judgments about that. All of them found that based on the anxiety that he presented with, he would have at the very least moderate limits in persistence and pace. And I think that the ALJ- Let me interrupt for just a second. Did Dr. Bromley see him in person? I believe he- Dr. Bromley found there was no evidence of limitation. There were only mild or moderate, right? Well, Dr. Bromley did find moderate limitations in a number of areas that based in this particular case on the V testimony would have precluded full time competitive employment. The V in this case said if a person was off task just 10% of the work day or more or missed more than a day a month from work, that person would be precluded from any jobs in the national economy. I think related to that point, I think two or perhaps three of the medical opinions specifically state that he would miss more than one day of work a month, which is the vocational expert said with his skill level that would not be enough. And it doesn't appear that the ALJ spoke to that very specific finding in the medical records that he wouldn't be able to, that he wouldn't miss more than one day a month. I don't believe that's spoken to by the ALJ. And I think it's significant in this case if, for example, we look to the reasons why he stopped working. He was able to work some days. The problem that he had in August and September is he had to leave work five days because of his anxiety and depression. It's the cyclical nature of the disease that's the issue. And I think when we have Dr. Bromley making this type of a notation, the long-time treating doctor, Dr. Schulte making this notice, when we have the doctor that examined him in January of 2019 says that he can't work, when we have the fact that he was unable to complete assignments, for example, getting on a subway train, because the nature of the anxiety condition, it waxes and wanes. He says himself in the record that he has good days and bad days, that at some points in the record he says 50% of his days are good and 50% of his days are bad. At other points he says that he has five good days and two bad days.  And the people that are the experts made the determination, just based on the fact that they observe anxiety and constricted effect, I think supports their finding that he would have at least these moderate limitations that based on the vocational expert would preclude all work. And I think that if you look in context, courts have stated that cycles of improvement and debilitating symptoms are a common occurrence. And in such circumstances it's error for the ALJ to pick out a few isolated instances of improvement over a period of months or years. That's from Estrella. And I think that that is what is happening here. The ALJ focuses on mental status examinations that indicate that the claimant has... So the ALJ is relying in part on Dr. Schulte's own notes, right? He's relying on Dr. Schulte's. He's picking and choosing from Dr. Schulte's notes in terms of mental status examinations. But it's not the whole context of the notes. The whole context of the notes show that he's having persistent anxiety. That's one of the reasons that he cites to. He doesn't cite to he has good memory in terms of coming up with his RFC, comes up with the anxiety, constricted effect, the fact that he has irrational thoughts. That's what he cited to. And that is supported by the longitudinal record over time. Well, all right. We've gone over a bit, but you still have two minutes for rebuttal. So we'll now hear from Ms. Kim. Good morning, Your Honors. May it please the Court. Elizabeth Kim for the Commissioner of Social Security. The Commissioner's decision should be affirmed because it was supported by substantial evidence. First, the ALJ properly evaluated the medical opinions in the record in accordance with the Commissioner's regulations. In doing so, the ALJ properly found that the opinions of Dr. Schulte and Dr. Ellis were not persuasive and that the marked limitations found by Dr. Bromley were not persuasive. The ALJ reached these determinations after finding that these opinions were not fully supported by nor consistent with the evidence in the record, which included Dr. Schulte's treatment notes from August 2018 through June 2019, which showed a sustained improvement of Mr. Nunez's anxiety and panic attacks with medication and treatment. I do find, looking at the notes in the record over time, that it does appear to suggest waxing and waning of improvement. There's nothing in the record to show that he has the therapy, he starts the medication, and it more or less continues to improve. There are periods of improvement noted, and there are periods where there's worsening of symptoms that are noted. So I think it's to the extent that the ALJ is relying on, like, well, he's improving and that that's in the records, I don't know that that is substantially supported by what's in the record, because over time, there's quite a bit of variance. Your Honor, we acknowledge and the ALJ acknowledge that Mr. Nunez had anxiety and panic attacks during the relevant period. However, the ALJ's decision discussed, as well as the district court's decision discussed, the overall improvement through time. In July of 2018, Mr. Schulte began to see Dr. Schulte. By August, Mr. Nunez already reported decreased anxiety and panic attacks admitted benefiting from his medications. In January and February, Dr. Schulte found that Mr. Nunez's anxiety and panic attacks were decreased. In January, Mr. Nunez reported that his anxiety and panic attacks were more manageable. While – can I just jump in, I guess, to kind of focus you on a particular concern that I have, and I raise it with your friend. The idea that all of the – multiple of the medical professionals said that – and continue to say up through this period – that he wouldn't be able to – that he would miss more than one day of work per month, which is what the vocational experts said. Someone with his skill set to be able to work full-time could not be able to miss more than one day a month per work. I don't see where the ALJ has addressed that. And I guess my other concern is this – his inability to ride the subway as well. And there's – by himself, that there's – again, that's something we see in the record. It improves, and then it gets worse, and he's like, I couldn't come to my appointment because I couldn't get on the subway. Those aspects, I guess, I'm concerned with what the ALJ is pointing to in the record to kind of – more specifically, that those just are not being addressed and that they are relevant to what his RFC would be. Yes, Your Honor. Well, we acknowledge that the ALJ could have expanded on her discussion of the absences opined by some medical sources and Mr. Núñez's ability to ride the train. When you say he could have said more, does the – does she say anything at all in the decision about this issue of missing days of work and the fact that multiple of the medical records, not just from Schulte but from, I believe, one of the – maybe it was Ellis, one of the other doctors as well, that he would not be able to be – he would miss more than one day of work a month? I don't – is that in the ALJ's decision? Is that addressed at all? Your Honor, the ALJ does not explicitly address the absences from work. However –  I'm looking at the ALJ opinion, pages 9 and 10, and I'm seeing her discuss Dr. Ellis and Dr. Schulte, saying that Dr. Schulte opines that Clayman will miss three workdays per month and then Dr. Ellis will miss more than three workdays per month, but that she finds it not consistent with the mental status exams and finds it not persuasive and kind of rejects Dr. Schulte by saying that a finding of disability is reserved to the commissioner. But I think she does at least mention it, whether it's a sound rejection, because I questioned whether just looking at the mental status exams that were also conducted was really a sufficient rebuff to that. But I think she does mention it. Yes, Your Honor, and I apologize for misspeaking. No, that's all right. Your Honor, the ALJ's decision reflects that she considered the absences opined by certain physicians. However, the ALJ's decision overall demonstrates that she found these opinions, including opinions about absences, not persuasive because they were not supported by Dr. Schulte's treatment notes and the mental status findings in the record. But can I just say, I mean, looking at that same portion of the decision on page nine where we're talking about the things that the ALJ is saying that point to the lack of consistency or supportability of these findings about days of work, it refers to things that don't relate in an obvious way anyway to the anxiety. I mean, the fact that the mental status, you know, talks about mental status examination showed normal speech, intact memory, calculation skills, and no more than a mildly impaired attention and concentration. I don't understand how calculation skills and memory and speech undermine a medical professional saying that this person has anxiety that's too great, that's preventing him from being in a work environment full time or getting on the subway. I mean, there seems to be a disconnect. Your Honor, the ALJ's discussion of Dr. Schulte's opinion included both discussion of the treatment notes in which Mr. Nunez admitted that he benefited from his medications and Dr. Schulte found that Mr. Nunez had reduced anxiety and panic attacks. And while these mental status findings may not explicitly address Mr. Nunez's anxiety and panic attacks, we submit that these mental status findings are relevant to the determination of whether an individual is able to perform low stress, unskilled work. We believe it's relevant that an individual has intact memory, calculation skills, and only mildly impaired attention and concentration. Those are factors relevant to someone's ability to do a specific, in the moment, do a particular task. But if that individual can't get on the subway to go to work or is not comfortable being around people for long periods of time, the fact that yes, he has the ability to, he has memory, he can do tasks, that doesn't address the question of if there are jobs in the workforce that he could obtain and do. Yes, Your Honor. With regard to Mr. Nunez's ability to ride the train, we acknowledge that Mr. Nunez reported fears of riding the subway. However, the longitudinal record also demonstrates that with Dr. Schulte's treatment, Mr. Nunez was able to ride the train more without panic attack symptoms. For example, in April of 2019, Mr. Nunez reported that he had a sudden increase in anxiety on the train, but that he was able to employ some of the coping mechanisms that he had learned through therapy, and he was able to remain on the train. Furthermore, while Mr. Nunez expressed concerns about being out in the public, Mr. Nunez engaged in a variety of activities in the public sphere. He attended his appointments and his consultative exams and his hearing in person. Most of the time, though, he missed some because he was, he missed at least one because he was afraid to get on the train and missed an appointment. Correct. Most of his appointments, his two consultative exams, his hearings in person. In addition, the record shows that his activities of daily living outside of the home increased over time. So, for example, in April of 2019, Mr. Nunez reported that he was engaged in volunteering as well as visiting family. The record also showed that Mr. Nunez attended church on a daily basis. And his church is across the street, so he didn't have to get on the subway for that, correct? That is correct. And his visits to his family also? I believe there was testimony that he walked to, either he walked when he was visiting family as well. Yes, Your Honor. So while we acknowledge and the ALJ acknowledged that Mr. Nunez had anxiety about riding the train, the ALJ's decision identified evidence to show that overall his anxiety and panic attacks were reduced with regular treatment and medication. And he was frequently riding the subway, right? Yes, Your Honor. I mean, the record at least demonstrates that Mr. Nunez was able to successfully ride the subway at least six times. And those are... I'm sorry, in what time period? From September through April. Once a month? Well, Your Honor, these are, these occasions may not be the only occasions when Mr. Nunez was able to ride the subway. However, on six occasions, Mr. Nunez reported, withdrawn. On six, during six visits, Mr. Nunez reported successfully riding the subway. Yeah, but he also discussed with Dr. Schulte that he was continuing to ride the subway. He was able to do it without anybody accompanying him. That would imply that he's not just taking the subway on the occasions when he goes to the doctor. That's correct, Your Honor. There were treatment notes which indicated that Mr. Nunez was able to ride the subway without any accompaniment. Shouldn't we be concerned, though, that there's no single professional whose opinion conforms or is adopted by the ALJ? She reviews them all and kind of picks and chooses and ultimately finds them not persuasive and finds Mr. Nunez not persuasive and imposes her own reading on a complicated and lengthy record that involves pharmacology and complex systems. That she is, I spoke earlier about not needing to defer to a treating physician. Nonetheless, it still is troubling to me that a lay person is rejecting the views of all of these professionals, some of whom opined that Mr. Nunez would not be able to attend work regularly. What can I do with that problem? Yes, Your Honor. Your Honor, this court has held that an RFC determination need not perfectly correspond with any specific medical opinion so long as it is supported by substantial evidence and that it is the ALJ who weighs the conflicting opinion to formulate an RFC determination. Here, substantial evidence supported the ALJ's RFC determination that Mr. Nunez could perform a range of low stress, unskilled work. That evidence included Dr. Schulte's treatment notes. That evidence included Dr. Bromley's finding of mild to moderate limitations in most areas of erect functioning. That evidence also included Mr. Nunez's activities of daily living, which showed that Mr. Nunez was engaged in exercise and yoga, which he said helped him manage his anxiety, visit his family, engage in volunteering and attending church. Am I right that Mr. Nunez, having been denied as to these years, possibly could have and may have applied again? That is correct. If his circumstances got worse? That's correct, Your Honor. Is that right? And this covered what period, this application? August 2018 through November 2019. Okay, so several years have passed, five years have passed. Okay, thank you. All right. Your Honor, if the court doesn't have any more questions, we request that the judgment be affirmed. Thank you. We'll now hear from Mr. Moran for two minutes of rebuttal. Yes, Your Honor. First of all, I would note that we cite to the fact that the claimant was able to go to church, but I think that the record shows that in the context of going to church, he said that he could walk across the street, and he also indicates that when he became anxious, he was able to leave. This is not consistent with full-time competitive work. Walking to a church across the street from your house, and if you're feeling anxious, you leave the church, is not something that you can do in a work environment. You can't just get up and leave work. The other thing, in the context of when the ALJ is saying that the claimant was better or that the claimant is riding subways, I think it goes to the very point that he suffers from an anxiety disorder, and his anxiety is better some days than it is other days. And some days he's able to ride a subway, and some days he's not. When he's doing better, according to the ALJ, for example, in May of 2019, he was unable to ride the subway that he used to take to work. He's given the assignment, try and get on the subway that went to work. He couldn't do it. He had to come into the doctor's office and say, I couldn't do it. And again, when he's supposedly doing better, he's observed in his group session to be on the verge of tears. So all this goes to the ability to maintain and persist at work, which is the problem that caused him to stop working to begin with when he missed five days in that last month. It's not that he can't do it some days. He can't do it regularly. And it's the opinion of all of these doctors that that is the case, because this is a mental health anxiety condition. And the doctor, when he cites to his finding as an expert, he does not cite to any of the things that the ALJ cites to. He cites to persistent and generalized anxiety. Every visit, he observes the claimant to be anxious. Every visit, with the exception of maybe one, he finds that the claimant has a constricted affect. That goes to his professional observations that he used to base his opinion. He found that he had persistent irrational fears, that he had recurrent panic attack, that he had persistent nightmares. This is based on his longitudinal treatment of the claimant. He describes what he experiences when he has a panic attack, tachycardia, trembling, shortness of breath, dizziness. Nothing in the record says that these panic attacks disappear. Well, but it says they're improving, right? They are improving, but improving is not consistent with the ability to maintain full-time competitive work. Okay, you could be improving from cancer. It doesn't mean that you could go to work five days a week. You could have fewer panic attacks, but doesn't that, consistent with the opinion of all these doctors, that doesn't mean that you wouldn't have moderate limitations in the ability to maintain pace. During those periods, when the improved panic attacks are present, they're not gone, he would not be able to stay in a work environment. And I think that that is the opinion evidence of the experts. The ALJ, as a layperson, picked particular items not cited by the experts to support her findings, but she's not an expert. She's not competent to make those determinations. And the courts in the state, in New York, have indicated that these type of conditions wax and wane, which is exactly what we see in this record. He gets a little bit better, he gets a little bit worse. Well, I mean, I don't think that's really consistent with what Dr. Schulte is saying. They're improving. You admitted a minute ago they were improving. So what's your basis for saying that wax and wanes, there's no improvement, this is just cyclical? There can be improvement, but not improvement to the point that you can sustain full-time competitive work. So he could be a little bit better. He doesn't have as many symptoms, that's improving. It doesn't happen as often, that's improving. It does not undermine his expert opinion that he would have these moderate limitations. It does not undermine the expert opinion of Dr. Bromley that he would have these moderate limitations. And when the experts applied, the ALJ adopted different reasons. And I think for these reasons, the record supports a finding of disability on behalf of the claimant. Okay. Well, thank you both. We will reserve decision.